1
2
3
4
5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF CALIFORNIA**

7

8    TANYA MORRISON et al.,                **CASE NO. 1:17-cv-00776-AWI-JLT**

9                 Plaintiffs,

10           v.                            **ORDER PARTIALLY GRANTING**
                                          **DEFENDANTS' MOTION FOR**
11   DHARAM PAL et al.,                    **PARTIAL SUMMARY JUDGMENT**

12                Defendants.              (Doc. No. 27)

13

14          This lawsuit is about four renters who allege that they were treated unlawfully by their

15   landlords.  The four renters are Plaintiffs Mario Tolls, Arissa Dickson Tolls, Tanya Lewis, and

16   Tanisha Wiley.  The two landlords are Defendants Dharam Pal and Vijay Pal.[1]

17          Before the Court is Defendants' motion for partial summary judgment.  See Doc. No. 27-1.

18   The motion requests summary judgment in Defendants' favor on two of Plaintiffs' thirteen claims:

19   (1) violation of California Civil Code § 1942.4, which is a statute that prohibits landlords from

20   collecting or demanding rent from their tenants who live in untenantable dwelling units; and (2)

21   violation of California Civil Code § 52.1, which is a statute known as the Bane Act that prohibits a

22   person from interfering or attempting to interfere with another person's legal rights.

23          On the unlawful rent collection claim, the Court will grant summary judgment against all

24   Plaintiffs except Tanisha.  On the Bane Act claim, the Court will grant summary judgment against

25   all Plaintiffs except Mario.  Accordingly, Tanisha's unlawful rent collection claim and Mario's

26   Bane Act claim may proceed to trial.

27   _____

28   [1] In this order, the Court will refer to the parties by their first names.  The Court intends no disrespect by doing so.
     Referring to the parties by their first names will foster clarity because multiple parties share the same last name and
     Tanya Lewis previously went by Tanya Morrison.

# I.  Summary Judgment Framework

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the lawsuit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984.  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets

forth specific facts showing that there is a genuine issue for trial.'" <u>Estate of Tucker v. Interscope Records</u>, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>See Anderson</u>, 477 U.S. at 255; <u>Matsushita</u>, 475 U.S. at 587; <u>Narayan v. EGL, Inc.</u>, 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable. <u>See Narayan</u>, 616 F.3d at 899. Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." <u>Fresno Motors, LLC v. Mercedes Benz USA, LLC</u>, 771 F.3d 1119, 1125 (9th Cir. 2015); <u>see also Holly D. v. Cal. Inst. of Tech.</u>, 339 F.3d 1158, 1175 (9th Cir. 2003). Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See Fitzgerald v. El Dorado Cnty.</u>, 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); <u>Sanders v. City of Fresno</u>, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." <u>Del Carmen Guadalupe v. Agosto</u>, 299 F.3d 15, 23 (1st Cir. 2002); <u>see Bryant v. Adventist Health System/West</u>, 289 F.3d 1162, 1167 (9th Cir. 2002). The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact. <u>Simmons v. Navajo Cnty.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" <u>Anderson</u>, 477 U.S. at 249-50; <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. <u>Nissan Fire</u>, 210 F.3d at 1103.

///

# II.  Factual Background[2]

All four Plaintiffs lived at Terrace Way Apartments, which is an apartment complex in Bakersfield, California with 65 units.  <u>See</u> PSAF No. 1.[3]  The street address of Terrace Way Apartments is 720 Terrace Way.  <u>See</u> PSFD No. 1;[4] Dharam Pal Depo., Vol. I, at 42:7-9.  Terrace Way Apartments are jointly owned by Dharam and Vijay.  <u>See</u> PSAF No. 2.

Mario lived in Unit 6 from approximately 2013 to July 2016.  <u>See</u> PSFD No. 1.  Arissa lived in Unit 6 from approximately May 2014 to July 2016.  <u>See</u> <u>id.</u> at No. 2.  Tanya lived in Unit 19 from approximately November 2015 through June 2016.  <u>See</u> <u>id.</u> at No. 3.  Tanisha lived in Unit 14 from approximately 2014 through April 2017.  <u>See</u> <u>id.</u> at No. 4.

## A.  Mario Tolls

One day while Mario lived at Terrace Way Apartments, Mario saw Al Saldivar on the apartment grounds walking towards the apartment office.  <u>See</u> PSAF No. 18; Mario Tolls Depo. at 97.  Mario believed Saldivar was a maintenance worker and manager at Terrace Way Apartments.  <u>Id.</u> at 96.  Mario approached Saldivar and told Saldivar that he, Mario, needed copies of his past rental receipts.  <u>Id.</u> at 97.  On a previous occasion, Mario unsuccessfully attempted to get his rental receipts from staff workers at Terrace Way Apartments.  <u>Id.</u> at 92-97.  Saldivar and Mario walked together into the apartment office.  <u>Id.</u> at 97.  After entering the apartment office, Saldivar looked for Mario's rental receipts in the file cabinets and on the computer.  <u>Id.</u> at 97-98.  Saldivar then told Mario that he could not find the rental receipts.  <u>Id.</u>; PSFD No. 9.  During this time, Mario believed Saldivar seemed agitated and looked upset.  <u>See</u> Mario Tolls Depo. at 97-98.  Saldivar told Mario that he, Mario, would have to come back another time to get his rental receipts.  <u>Id.</u> at 98.  At the same time, Saldivar pulled out a gun and placed it on the desk in front of Mario.  <u>Id.</u> at 97-99.  Mario was shocked, and Mario asked Saldivar, "What is the gun for?"  <u>Id.</u> at 98.  Saldivar responded, "I have to carry this around.  People around here has been acting up."  <u>Id.</u>  Saldivar also said, "Well, people's been threatening us" or threatening Saldivar's girlfriend, who Mario

---

[2]  The facts in this order are viewed in the light most favorable to Plaintiffs, the non-moving party.  <u>Albino v. Baca</u>, 747 F.3d 1162, 1166 (9th Cir. 2014).
[3]  "PSAF" refers to "Plaintiffs' Separate Statement of Additional Material Facts," Doc. No. 34.
[4]  "PSFD" refers to "Plaintiffs' Statement of Genuine Issues of Material Fact in Dispute," Doc. No. 33.

believed was also a manager at Terrace Way Apartments. <u>Id.</u> Mario responded by telling Saldivar

that he, Mario, did not do anything to Saldivar. <u>Id.</u> Saldivar told Mario, "Well, you just have to

come back later because I can't find any receipts right now." <u>Id.</u> Mario felt nervous and walked

out of the apartment office. <u>Id.</u> While Saldivar never pointed the gun at Mario, Mario believed

that Saldivar placed the gun on the desk in a "threatening manner." <u>Id.</u> at 99.[5]

**B.    Tanya Tolls**

One day while Tanya lived at Terrace Way Apartment, Dharam came to Tanya's apartment

because Tanya had not paid her rent. <u>See</u> Tanya Lewis Depo. at 40-41, 52-53. This was the first

time Tanya met Dharam. <u>Id.</u> at 40-41, 52. Dharam and Tanya had a conversation, during which

Dharam asked Tanya when she was going to pay her rent. <u>Id.</u> at 41. Tanya told Dharam that she

was not going to pay her rent because there were mice, bedbugs, and roaches in her apartment and

she was moving. <u>Id.</u> Tanya also told Dharam that there were holes in her wall and water coming

through her apartment door when it rained. <u>Id.</u> at 53. Dharam responded by saying, "Black folks

are to tear up stuff." <u>Id.</u> Tanya responded by saying, "I just moved here, and I haven't tore up

anything. So if you saying I tore up something, well, where is the roaches and the mouses coming

from?" <u>Id.</u> Dharam also told Tanya to "go back to where [you] come from." <u>Id.</u> at 54. Tanya,

who is African American, interpreted this statement to mean, "go back to Africa." <u>See</u> Tanya

---

[5] For the following reasons, the Court takes the factual assertions in Mario's deposition testimony about the incident between Mario and Saldivar, even if hearsay, as undisputed for purposes of ruling on Defendants' motion. First, in Defendants' motion and reply, Defendants relied on and quoted Mario's deposition testimony about the gun incident, including the testimony about Saldivar's statements to Mario. <u>See</u>, <u>e.g.</u>, Doc. 27-1 at 7 (Defendants' motion relying on and quoting Mario's deposition testimony, including the testimony about Saldivar's statements, to advance Defendants' argument). Second, in Defendants' motion, Defendants assumed for the sake of their argument that the incident and conversation between Mario and Saldivar occurred. <u>See</u>, <u>e.g.</u>, 27-1 at 8:10-13 ("Accordingly, even if pulling out a gun and placing it on the desk is considered a threatening or intimidating act, it was related to 'people acting up' and threats against Mr. Saldivar, not to prevent Mario Tolls from exercising a Constitutional or statutory right as required in Bane Act claims."). Third, in Defendants' motion and reply, Defendants did not dispute Mario's deposition testimony about the gun incident and conversation with Saldivar, although they referred to some of the testimony's details of the gun incident as "allegations." <u>See</u>, <u>e.g.</u>, Doc. No. 36 at 6:9-10. Fourth, although Plaintiffs' statement of facts relied heavily on Mario's deposition testimony of the gun incident and conversation with Saldivar, <u>see</u> PSAF Nos. 18-22, Defendants did not make admissibility objections to Plaintiffs' use of Mario's deposition testimony. <u>See</u> Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co., 953 F.2d 478, 484 (9th Cir. 1991) ("Defects in evidence submitted in opposition to a motion for a summary judgment are waived absent a motion to strike or other objection."); <u>Lew v. Kona Hosp.</u>, 754 F.2d 1420, 1423 (9th Cir. 1985) ("Finally, as a general principle we treat the opposing party's papers more indulgently than the moving party's papers."); <u>Scharf v. U.S. Atty. Gen.</u>, 597 F.2d 1240, 1243 (9th Cir. 1979) ("Generally, however, such formal defects are waived absent a motion to strike or other objection, neither of which occurred here. Moreover, courts generally are much more lenient with the affidavits of a party opposing a summary judgment motion."). Fifth, Mario's deposition testimony about his conversation with Saldivar is <u>not</u> being used in the order to <u>grant</u> summary judgment against a claim.

Lewis Decl. at ¶ 2; Tanya Lewis Depo. at 54. Tanya did not know if that is what Dharam meant

by the statement. Id. at 54. Dharam then walked away. Id. at 53.

On another occasion while Tanya lived at Terrace Way Apartment, Tanya was in her

apartment with her apartment door open. Id. at 58. Tanya saw Dharam walk by outside her

apartment door. Id. at 58. Tanya then overheard but did not see Dharam speak with the tenant of

a neighboring apartment unit, who was a black man. Id. at 57-58. Rent was discussed by Dharam

and the neighbor. Id. at 58. Tanya then heard Dharam call the neighbor a "nigger," and she heard

the neighbor respond by "cuss[ing] out" Dharam. Id. Dharam then walked away. Id. at 57-58.

There was no physical altercation between Dharam and the neighbor. Id. at 58.[6]

**C.     Tanisha Wiley**

Tanisha lived at Terrace Way Apartments in Unit 14 from approximately 2014 to April

2017. See Tanisha Wiley Depo. at 46-47; PSFD No. 4. During that entire time, a window in

Tanisha's apartment was defective because it would not fully close. See Tanisha Wiley Depo. 46-

47. On February 15, 2017, Defendants issued to Tanisha a three-day notice demanding payment

of rent or to quit. See Liza Cristol-Deman Decl. at ¶ 12; Doc. No. 35-9.

**D.     Code enforcement records from City of Bakersfield**

The code enforcement division of the City of Bakersfield's produced in this lawsuit

records pertaining to Terrace Way Apartments. See Liza Cristol-Deman Decl. at ¶¶ 7-8, 10. One

of the records is titled, "7-Day Notice to Abate Municipal Code Violation," and is dated

November 2, 2016. See id. at ¶ 8; Doc. No. 35-7. The 7-Day Notice is comprised of two pages.

---

[6] For the following reasons, the Court takes the factual assertions in Tanya's deposition testimony about Dharam's speech with her neighbor, even the hearsay, as undisputed for purposes of ruling on Defendants' motion. First, in Defendants' reply, Defendants assumed for the sake of their argument that Dharam's speech occurred. See, e.g., Doc. No. 36 at 7 ("However, for purposes of this motion, even assuming defendants used the 'n-word,' speech alone — no matter how vile — is not actionable under the Bane Act, unless such speech 'threatens violence against a specific person or group of persons.'"). Second, although Plaintiffs' statement of facts relied heavily on Tanya's deposition testimony about Dharam's speech, see PSAF Nos. 23-25, Defendants did not make admissibility objections to Plaintiffs' use of Tanya's deposition testimony. See supra n.5. Third, as will be discussed infra, the testimony from Tanya about Dharam's speech — which Plaintiffs rely on to oppose summary judgment from being granted against Tanya's Bane Act claim — will not protect Tanya's Bane Act claim from being granted in Defendants' favor.

On the top of the first page in the "Re:" line, the 7-Day Notice references the address of Terrace Way Apartments, 720 Terrace Way. See id. Also on the first page, the 7-Day Notice states that "[Y]our property is in violation of the Bakersfield Municipal Code. Specific violations are on attached page." Id. At the bottom of the first page, there is a typed signature line that states, "Reginald Gardner / Code Enforcement Officer." Id.

The attached second page of the 7-Day Notice references two violations. Id. The first is a violation for "Broken Window." The 7-Day Notice includes a "narrative" for this violation, which states, "Make repairs to any occupied units with broken windows located throughout your property and board up any unoccupied units to avoid further legal action." Id.

A second record from the City of Bakersfield is titled, "Case History Report." See Liza Cristol-Deman Decl. at ¶ 7; Doc. No. 35-6. The Case History Report consists of two pages. Id. On the top-left corner of the first page, the Case History Report references the address of Terrace Way Apartments, 720 Terrace Way. See Doc. No. 35-6. The Case History Report also references an "initial inspection" that was "scheduled" for "October 20, 2016," the "status" of which is "completed." Id. Near that reference, the Case History Report identifies Reginald Gardner as the inspector. Id.

The Case History Report references a "broken window" for "Unit 17." Id. The Case History Report also references "Unit 14," and immediately to the right of that reference is a black redaction. Id. The redaction was made by the City of Bakersfield. See Liza Cristol-Deman Decl. at ¶ 7. The Case History Report references "violations" associated with the date, November 1, 2016, and one of the associated violations is described as "broken window." See Doc. No. 35-6. The broken window violation appears to be associated with a "location," which states, "Any broken window constituting a hazardous condition and facilitating trespass." Id. Nearby on the Case History Report, there is a column with a heading titled, "Resolved." Id. Under the heading, the Case History Report references the date, November 17, 2017. Id. The Case History Report also references a "7-Day Notice," and next to the reference is the word, "issued," and next to the word "issued" is the date, November 2, 2016. Id.

During discovery in this lawsuit, Plaintiffs and Defendants sought to clarify the contents of the 7-Day Notice and Case History Report by deposing Ignacio Morales, the City of Bakersfield's code enforcement officer who handled most of the inspections at Terrace Way Apartments. See Liza Cristol-Deman Decl. at ¶ 7. However, Morales did not appear for his noticed deposition, and it appears that Morales has never been deposed by the parties. Id. at ¶ 9.

## III.  Defendants' Motion

**A.  Parties' arguments**

<u>1.</u>  <u>Mario's Bane Act claim</u>

*i.  Defendants' arguments*

Defendants argue that Mario's Bane Act claim fails as a matter of law because there is insufficient evidence to establish an element of the claim — namely, that Defendants intentionally interfered or attempted to interfere with Mario's exercise of legal rights by threats, intimidation, or coercion. To support this argument, Defendants offer the following two contentions.

First, the evidence establishes that Saldivar pulled out and placed the gun on the desk in front of Mario for only one reason: people at Terrace Way Apartments other than Mario were "acting up" and had made threats against Saldivar and/or Saldivar's girlfriend. Therefore, Saldivar's conduct with the gun did not constitute threats, intimidation, or coercion directed towards Mario. Moreover, Saldivar's conduct did not interfere or attempt to interfere with Mario's exercise of his legal rights.

Second, Saldivar's conduct with the gun cannot be imputed under a theory of respondeat superior to Dharam or Vijay, neither of whom intended to interfere with Mario's legal rights or authorized Saldivar to carry a gun.

*ii.  Plaintiffs' arguments*

Plaintiffs argue that a reasonable factfinder could find that Saldivar placed the gun on the desk in front of Mario as a threat or form of intimidation intended to interfere with Mario's exercise of legal rights. To support this argument, Plaintiffs point to the following four facts, all of which Plaintiffs claim are supported by evidence. First, Saldivar placed the gun on the desk in front of Mario in a threatening manner. Second, Saldivar's handling of the gun made Mario

8

nervous. Third, when Saldivar pulled out the gun, Mario assumed that he might be one of the people that Saldivar was referring to when Saldivar said that people at the apartment complex had been acting up. Fourth, there is no evidence that Saldivar had a benign motive when he pulled out the gun and placed it on the desk in front of Mario. Plaintiffs also assert that Mario had a legal right to collect rent receipts and the quiet enjoyment of his apartment complex.

2.     Tanya's Bane Act claim

    i.     *Defendants' arguments*

    Defendants argue that Tanya's Bane Act claim fails as a matter of law because there is insufficient evidence to establish an element of the claim — namely, that Dharam's speech threatened violence.

    ii.     *Plaintiffs' arguments*

    Plaintiffs argue that a reasonable factfinder could find that Dharam intentionally interfered or attempted to interfere with Tanya's exercise of legal rights through threats, intimidation, or coercion. To support this argument, Plaintiffs offer the following two contentions. First, Dharam's conduct — which consisted of telling Tanya to go back to where she came, telling Tanya that black people don't take care of anything, and using the term "nigger" when talking to Tanya's black neighbor — amounted to threats, intimidation, or coercion that was intended to interfere with Tanya's exercise of her legal right to rent housing free of racial discrimination. Second, Dharam's use of the word "nigger" amounted to more than just speech because the use of the word implicitly threatens violence against African Americans.

3.     Tanisha's unlawful rent collection claim

    i.     *Defendants' arguments*

    Defendants argue that Tanisha's claim for unlawful rent collection fails as a matter of law because there is insufficient evidence to establish two elements of the claim — namely, (1) that a public officer or employee notified Defendants in writing about Tanisha's defective window; and (2) that Tanisha's window was not abated within 35 days of service of the written notice. To support this argument, Defendants offer the following two contentions. First, Dharam has never paid any fines for code enforcement violations to the City of Bakersfield related to Terrace Way

Apartments, and this demonstrates that Defendants have never failed to timely abate or remedy any nuisance or substandard condition at Terrace Way Apartments identified in any official notice served on Defendants.[7] Second, Tanisha declared that she is not aware of whether a nuisance or substandard condition in her unit was abated beyond 35 days from the date that notice was served on Defendants.

Defendants also raise two additional contentions in their reply. First, there is insufficient evidence to prove that a notice of a nuisance or substandard condition in Tanisha's unit was served on Defendants. Second, although Tanisha relies on the 7-Day Notice as evidence that Defendants were provided with notice of a nuisance or substandard condition, the 7-Day Notice is addressed to Treble LLC at 909 Chester Avenue, and Dharam has never had an affiliation with an entity named Treble LLC and he has never had an office or residence located at a 909 Chester Avenue address.

*ii.* *Plaintiffs' arguments*

Tanisha argues that a reasonable factfinder could find that Defendants failed to abate Tanisha's defective window within 35 days of being served with notice based on the following three facts, all of which are supported by evidence. First, a code enforcement officer from the City of Bakersfield inspected Tanisha's defective window on November 1, 2016. Second, the City of Bakersfield issued the 7-Day Notice to Defendants on November 2, 2016, and the 7-Day Notice attached the Case History Report, which referenced Tanisha's broken window. Third, Tanisha's defective window never closed properly as long as Tanisha lived in Unit 14, which spanned from 2014 to April 2017.

**B.      Plaintiffs' voluntary abandonment of claims**

After Defendants filed the motion for partial summary judgment, Plaintiffs filed their opposition. In the opposition, Plaintiffs stated that they voluntarily abandoned multiple claims. Specifically, Mario, Arissa, and Tanya abandoned their unlawful rent collection claims; and Arissa and Tanisha abandoned their Bane Act claims. See Doc. No. 32 at 1-2.

---

[7] Plaintiffs object that it is irrelevant whether Dharam has paid any fines for code enforcement violations. See PSFD No. 8. The objection is overruled. See Fed. R. Civ. P. 401.

Therefore, on the unlawful rent collection claim, the Court will grant summary judgment against Mario, Arissa, and Tayna. And on the Bane Act claim, the Court will grant summary judgment against Arissa and Tanisha. What remains to be adjudicated in this order is Tanisha's unlawful rent collection claim and Mario's and Tanya's Bane Act claims.

**C.    Discussion**

<u>1.</u>    <u>Mario's Bane Act claim</u>

A Bane Act claim derives from California Civil Code § 52.1, which states, in part:

> (a) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . .

> (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

> (j) Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

There are two distinct elements of a Bane Act claim: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion. <u>Allen v. City of Sacramento</u>, 234 Cal. App. 4th 41, 67 (2015). Additionally, if the interference or attempted interference was accomplished by only speech, then the defendant's speech must threaten violence in order to be actionable. <u>See</u> Cal. Civ. Code § 52.1(j).

Defendants argue that summary judgment should be granted in their favor on Mario's Bane Act claim because there is insufficient evidence to support an essential element of the claim —

11

namely, that Defendants interfered or attempted to interference with Mario's exercise of legal rights by actionable threats, intimidation, or coercion. The Court disagrees.

        *i.*        *Whether there was actionable threatening, intimidation, or coercion*

Saldivar interfered or attempted to interfere with Mario's exercise of legal rights by actionable threats or intimidation — this is a finding that a reasonable factfinder could make based on the following facts and reasonable inferences. See Triton Energy Corporation v. Square D Company, 68 F.3d 1216, 1221 (9th Cir. 1995) ("[I]nferences may be drawn from a nonmoving party's direct and circumstantial evidence to establish a genuine issue of material fact so long as such evidence was of sufficient quantum or quality."); Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) ("[T]he [summary judgment] inquiry focuses on whether the nonmoving party has come forward with sufficiently specific facts from which to draw reasonable inferences about other material facts that are necessary elements of the nonmoving party's claim.") (emphasis added).

First, Saldivar intended to convey to Mario that he, Saldivar, did not intend to provide Mario with the requested rental receipts at that time. This is a reasonable inference drawn from the fact that Saldivar told Mario that Mario would have to come back later to obtain the rental receipts.

Second, Saldivar intended to convey to Mario that he, Mario, was the intended target of the gun because Saldivar said the gun was intended for the people who lived at the apartment complex, which included Mario. This is a reasonable inference drawn from the fact that in conjunction with placing the gun on the desk in front of Mario, Saldivar also told Mario that the "people around here" were the reason that Saldivar carried the gun.

Third, Saldivar intended to convey to Mario that he, Saldivar, would use the gun on Mario if Mario did not leave the apartment office or continued seeking his rental receipts at that time. This is a reasonable inference drawn from the fact that Saldivar made the gun clearly visible to Mario in conjunction with telling Mario to come back later for his rental receipts.

Fourth, because of Saldivar's conduct, Mario left the apartment office without his rental receipts.

Based on the foregoing facts and reasonable inferences, the Court concludes that a reasonable factfinder could find that Saldivar interfered or attempted to interfere with Mario's exercise of legal rights by actionable threats or intimidation. Therefore, Defendants have failed to demonstrate that there is insufficient evidence to support this element of Mario's claim.

Defendants' primary argument to the contrary is that the only reasonable inference that can be drawn from Saldivar's conduct is that he pulled out and showed the gun to Mario because he, Saldivar, was defending or attempting to defend himself and/or his girlfriend from people other than Mario at the apartment complex. The Court does not disagree with Defendants that a reasonable factfinder could infer that Saldivar's conduct was based, at least in part, on self-defense and not intended as a threat or intimidation towards Mario. But the Court does disagree that this is the only inference that could be drawn by a reasonable factfinder. As discussed above, a reasonable factfinder could find that Saldivar placed the gun in front of Mario to threaten or intimidate Mario against seeking his rental receipts, and the Court must accept the reasonable inference that favors the non-moving party, which is Mario. See Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 680-81 (9th Cir. 1985) ("In determining whether an inference may be reasonable, the district court should not weigh competing inferences against each other.") (emphasis added).

### ii.    Vicarious liability under the Bane Act

Defendants also argue that Saldivar's conduct cannot be imputed to Defendants under the doctrine of respondeat superior or agency principles because Defendants did not authorize Saldivar to carry a gun and did not know that Saldivar carried a gun. To support this argument, Defendants do not cite any supporting authority other than a single California opinion that stands for the noncontroversial proposition that actionable misconduct under the Bane Act must be

intentional.  See Simmons v. Superior Court, 7 Cal. App. 5th 1113, 1125 (2016) (stating "the Bane Act requires that the challenged conduct be intentional").

Plaintiffs counter Defendants' argument by suggesting that several courts have held that an employee's liability under the Bane Act may extend to the employer under the doctrine of respondeat superior and agency principles.  However, three of Plaintiffs' four cited authorities do not firmly support Plaintiffs' position.  The first two cited authorities, Gant v. Los Angeles Cnty., 772 F.3d 608 (9th Cir. 2014) and K.T. v. Pittsburg Unified Sch. Dist., 219 F. Supp. 3d 970 (N.D. Cal. 2016), merely affirm the proposition that public entities may be liable for the actions of their employees.  See Gant, 772 F.3d at 623 (stating that "[u]nder California law, public entities are liable for actions of their employees within the scope of employment"); K.T., 219 F. Supp. 3d at 975-76 (affirming the proposition in a case where the defendants were a school district and school district employees).  These cases are clearly distinguishable because Defendants are not a public entity and Saldivar is not a government employee.  The third cited authority, Farmers Insurance Group v. Santa Clara County, 11 Cal. 4th 992 (1995), merely affirms California's doctrine of respondeat superior but does not discuss whether the doctrine applies to Bane Act claims.

The fourth and final cited authority, Chew v. Hybl, No. C 96–03459 CW, 1997 WL 33644581 (N.D. Cal. Dec. 9, 1997), is much more on point, and the Court finds it persuasive here. In Chew, the owners of a home marketed the home for rent.  The plaintiffs were interested in renting the home and wanted to take a tour.  The homeowners authorized Ms. Hybl to show the home to the plaintiffs.  Hybl arrived at the open-house intoxicated.  She then took the plaintiffs through the home, but while doing so, she made several derogatory comments to the plaintiffs about the plaintiffs' race.  After Hybl made the comments, the plaintiffs left the house and gathered outside the house around one of their cars.  The plaintiffs discussed how shocked they were at the blatantly discriminatory behavior of Hybl, and one of the plaintiffs made a comment about a lawsuit.  Hybl then emerged from the doorway of the house and yelled more racist comments at the plaintiffs.  Hybl then began approaching the plaintiffs, waving her arms.  The plaintiffs got in their cars and locked the car doors, fearing Hybl would physically assault them. Hybl walked up to one of the plaintiff's cars and hit the hood and the windshield with her hand,

14

continuing to yell similar racist comments. Hybl's strike against the windshield landed in front of the face of one of the plaintiffs.

The plaintiffs sued Hybl and the homeowners. Plaintiffs pleaded several claims, including a Bane Act claim. Plaintiffs filed a motion for summary judgment on their Bane Act claim against Hybl, which the court granted. Then the issue arose of whether the homeowners could be vicariously liable under the Bane Act for Hybl's misconduct. In a well-reasoned decision, the court concluded that the homeowners could be held vicariously liable under the Bane Act for Hybl's misconduct.

The court's conclusion in <u>Chew</u> flowed from, in part, the following three points. First, vicarious liability in California may exist even for willful and malicious torts if the tortious conduct results or arises from a dispute over the performance of an employee's duties, even though the conduct is not intended to benefit the employer or to further the employer's interests. <u>Id.</u> at *12 (citing <u>Farmers Ins. Grp.</u>, 11 Cal. 4th at 1004 ). Accordingly, Hybl's misconduct fell within the grasp of respondeat superior liability because the misconduct resulted and arose from Hybl's performance of her duties showing the home to prospective renters. <u>Chew</u>, 1997 WL 33644581, at *12 ("Ms. Hybl's animosity toward Plaintiffs arose directly from her intolerance of Plaintiffs as prospective tenants.").

Second, although Hybl's conduct was startling and unusual, it was "not so unusual that the property owners should be absolved of responsibility for putting [Hybl] in a position of presenting the rental premises to prospective tenants without closer supervision." <u>Id.</u> at *13 (citing <u>Farmers Ins. Grp.</u>, 11 Cal. 4th at 1027–28).

Third, it would be consistent with California's policy considerations undergirding the respondeat superior doctrine to hold the homeowners vicariously liable.

The foregoing analysis from <u>Chew</u> is both applicable and persuasive here. First, Saldivar's conduct with the gun resulted and arose from his managerial duties of retrieving and providing rental receipts to tenants.

Second, Saldivar worked as a maintenance worker and manager at an apartment complex in Bakersfield, California where he and/or his girlfriend, also a manager, had been threatened by

"people around here" and where several apartment units were boarded.  See Mario Tolls Depo. at 98; Case History Report (Doc. No. 35-6) (identifying eleven units that "are boarded"); PSAF No. 3 (stating that half of the units at Terrace Way Apartments were unoccupied, boarded up, or both as of March 30, 2017).  Based on the nature of Defendants' enterprise at Terrace Way Apartments, Saldivar's conduct in carrying and pulling out a gun in front of a tenant is not so unusual or startling that it would be unfair to include any resulting loss in Defendants' costs of doing business.  See Farmers Ins. Grp., 11 Cal. 4th at 1027–28 ("Thus the correct test for determining when an employee's conduct is within the scope of employment for respondeat superior purposes is . . . whether the conduct is a risk inherent in or created by the enterprise, and the best way to determine whether a risk is inherent in or created by an enterprise is to ask . . . whether the employee's conduct was so unusual or startling in the context of that enterprise that it would be unfair to include the resulting loss in the employer's costs of doing business.") (citations omitted). Defendants' own position actually supports this conclusion.  Defendants posit that Saldivar carried the gun while working at the Terrace Way Apartments out of self-defense.  Therefore, the plausibility of Defendants' position that Saldivar believed he needed a gun for self-defense lends credence to the conclusion that Saldivar's conduct in pulling out a gun in front of a tenant is not so unusual in Defendants' enterprise so as to fall beyond the grasp of respondeat superior liability.

Third, California's policy considerations for its respondeat superior doctrine harmonize with allowing Defendants to be held vicariously liable for Saldivar's conduct with the gun.  The first policy consideration is that the doctrine of respondeat superior is intended to deter tortious conduct by creating a strong incentive for vigilance by those in a position to guard against the evil to be prevented.  See Chew, 1997 WL 33644581, at *13.  Here, Defendants claim that they were unaware that Saldivar possessed a gun while working at their apartment complex.  Holding Defendants vicariously liable for Saldivar's conduct will create a strong incentive for Defendants to guard against similar conduct in the future.

The second policy consideration is "to provide greater assurance of compensation for victims."  Id.  Because "[p]roperty owners have assets available for compensation at least to the extent of their equity in the property, and ordinarily also carry insurance," id., holding Defendants

vicariously liable for Saldivar's conduct, if warranted, will provide greater assurance of compensation for the Plaintiffs.

The third and final policy consideration is "to spread the risk of tortious conduct among the beneficiaries of the enterprise, where appropriate." Id. Because "landlords are in a position to spread the costs of their agents' misconduct across their tenant base, or across the broader population of tenants if they carry insurance, and because tenants who have entered into leases with landlords have benefitted from the acts of the landlord's agents," id., imposition of vicarious liability on the Defendants will spread the risk of liability among the beneficiaries of Defendants' enterprise.

Without justification, Defendants did not address in their reply the arguments or cited authorities from Plaintiffs' opposition about vicarious liability.[8] In any event, the Court adopts the reasoning of Chew and concludes that Defendants are capable of being held vicariously liable for Saldivar's conduct under the Bane Act.

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment as to Mario's Bane Act claim.

2.      Tanya's Bane Act claim

Defendants argue that summary judgment should be granted on Tanya's Bane Act claim because there is insufficient evidence to support an essential element of the claim — namely, that Dharam's speech threatened violence. The Court agrees.

Tanya's Bane Act claim is based entirely on Dharam's speech, which consisted of Dharam telling Tanya words to the effect of, "Black folks are to tear up stuff" and "go back to where [you] come from" and calling Tanya's neighbor a "nigger." Because Tanya's Bane Act claim is premised entirely on the foregoing speech, an element of Tanya's claim is that the speech must threaten violence. See California Civil Code § 52.1(j) (cited by Allen, 234 Cal. App. 4th at 66 ("[S]peech alone is not sufficient to support an action brought pursuant to section 52.1 subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person

_____

[8]  In their reply, Defendants discuss Chew, 1997 WL 33644581, but not to discuss the issue of vicarious liability and the doctrine of respondeat superior.

17

or group of persons; and the person or group of persons against whom the threat is directed

reasonably fears that, because of the speech, violence will be committed against them or their

property and that the person threatening violence had the apparent ability to carry out the

threat.")).

To evaluate whether Dharam's speech threatened Tanya with violence, the Court considers

whether a reasonable person standing in Tanya's shoes would have been intimidated by Dharam's

speech and perceived a threat of violence. See Winarto v. Toshiba Am. Elecs. Components, Inc.,

274 F.3d 1276, 1289 (9th Cir. 2001); see also Muhammad v. Garrett, 66 F. Supp. 3d 1287, 1296

(E.D. Cal. 2014). "A threat is an expression of an intent to inflict evil, injury, or damage on

another." In re M.S., 10 Cal. 4th 698, 710 (1995) (citing United States v. Orozco-Santillan, 903

F.2d 1262, 1265 (9th Cir. 1990)). Here, no reasonable factfinder could find that the Dharam's

speech threatened violence to Tanya. Therefore, Tanya cannot prove an element of her Bane Act

claim.

Tanya offers two arguments to the contrary. First, Tanya contends that the use of the word

"nigger" implicitly threatens violence. The authorities cited by Tanya, however, do not support

the argument,[9] and the Court rejects the argument.[10] Second, Tanya contends that a jury should

decide whether Dharam's speech threatened violence. The Court has already concluded that no

reasonable factfinder could find that the Dharam's speech threatened violence to Tanya, so the

Court must reject this argument because it undermines the purpose of the summary judgment rule,

Fed. R. Civ. P. 56. See U.S. ex rel. Anderson v. Northern Telecom, Inc., 52 F.3d 810, 815 (9th

Cir. 1995) ("One of the principal purposes of the summary judgment rule is to isolate and dispose

of factually unsupported claims. It is not a disfavored procedural shortcut, but has replaced pre-

1938 devices as the principal tool by which factually insufficient claims or defenses can be

---

[9] One of Plaintiffs' cited authorities actually undercuts Plaintiffs' argument. In In re Michael M., 86 Cal. App. 4th 718, 730 (2001), the court distinguished between the use of the word "Nigger," one on hand, and the use of the phrase, "Kill the Niggers," on the other hand, noting that it was only the latter that was "reasonably interpreted as a direct, violent threat." Id.

[10] It is notable that even if Dharam's use of the word "nigger" threatened violence, Dharam directed the word towards Tanya's neighbor, not Tanya. Therefore, Dharam's use of the word towards Tanya's neighbor would not provide a basis for Tanya's Bane Act claim. See Cal. Civ. Code § 52.1(j).

isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.") (citations omitted).

For the foregoing reasons, the Court will grant Defendants' summary judgment motion as to Tanya's Bane Act claim.

3.     Tanisha's unlawful rent collection claim

Tanisha's unlawful rent collection claim derives from California Civil Code § 1942.4(a)(1)-(4), which outlines the elements of the claim:

> (a) A landlord of a dwelling may not demand rent, collect rent, issue a notice of a rent increase, or issue a three-day notice to pay rent or quit pursuant to subdivision (2) of Section 1161 of the Code of Civil Procedure, if all of the following conditions exist prior to the landlord's demand or notice:

> (1) The dwelling substantially lacks any of the affirmative standard characteristics listed in Section 1941.1 or violates Section 17920.10 of the Health and Safety Code, or is deemed and declared substandard as set forth in Section 17920.3 of the Health and Safety Code because conditions listed in that section exist to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants of the dwelling.

> (2) A public officer or employee who is responsible for the enforcement of any housing law, after inspecting the premises, has notified the landlord or the landlord's agent in writing of his or her obligations to abate the nuisance or repair the substandard conditions.

> (3) The conditions have existed and have not been abated 35 days beyond the date of service of the notice specified in paragraph (2) and the delay is without good cause. For purposes of this subdivision, service shall be complete at the time of deposit in the United States mail.

> (4) The conditions were not caused by an act or omission of the tenant or lessee in violation of Section 1929 or 1941.2.

Cal. Civ. Code § 1942.4(a)(1)-(4) (emphasis added).

Defendants argue that summary judgment should be granted on Tanisha's unlawful rent collection claim because there is insufficient evidence to support two elements of the claim: (1) that a public officer or employee notified Defendants in writing about Tanisha's defective window; and (2) that Tanisha's window was not abated within 35 days of Defendants being served with written notice of the defective window. The Court disagrees.

/ / /

*i.      Whether Defendants were served with notice of Tanisha's defective window*

A public officer or employee for the City of Bakersfield served Defendants with written notice of Tanisha's defective window — this is a finding that a reasonable factfinder could make based on the following facts and reasonable inferences.  See Triton Energy Corporation, 68 F.3d at 1221 ("[I]nferences may be drawn from a nonmoving party's direct and circumstantial evidence to establish a genuine issue of material fact so long as such evidence was of sufficient quantum or quality."); Pac. Elec. Contractors Ass'n, 809 F.2d at 631 ("[T]he [summary judgment] inquiry focuses on whether the nonmoving party has come forward with sufficiently specific facts from which to draw reasonable inferences about other material facts that are necessary elements of the nonmoving party's claim.") (emphasis added).

First, on November 1, 2016, Tanisha's window did not fully close.

Second, on November 1, 2016, a code inspection officer for the City of Bakersfield inspected Terrace Way Apartments and observed Tanisha's defective window.  This is a reasonable inference based on the following facts.  The Case History Report references the address of Terrace Way Apartments and references "violations" associated with the date of "November 1, 2016."  Doc. No. 35-6.  One of the violations is described as "broken window."  Id.  The "location" associated with the broken window violation states, "Any broken window constituting a hazardous condition and facilitating trespass."  Id.  The Case History Report provides a "narrative" of the broken window violation, which states, "Make repairs to any occupied units with broken windows located throughout your property and board up any unoccupied units to avoid further legal action."  Id.  The Case History Report identifies a "broken window" for "Unit 17."  Id.  The Case History Report also references Unit 14 — which is Tanisha's unit — and immediately next to the reference of Unit 14 is a black redaction.  A reasonable inference is that the black redaction is of a written word.[11]  As for the 7-Day Notice, it is dated November 2, 2016, and it also references the address of Terrace Way Apartments.  See Doc. No. 35-7.  The 7-Day Notice

---

[11]  Based on the several references to broken windows in the Case History Report and the 7-Day Notice, and based on the Case History Report's reference to Unit 14, and based on the fact that Tanisha's window was defective at the time of the inspection on November 1, 2016, it would not be unreasonable to infer that the redacted word associated with Unit 14 was about a window.

identifies two violations, the first being a violation for "Broken Window." Id. The 7-Day Notice includes a "narrative" for this violation, which states, "Make repairs to any occupied units with broken windows located throughout your property and board up any unoccupied units to avoid further legal action." Id.

Third, the City of Bakersfield served written notice of Tanisha's defective window to Defendants at the Terrace Way Apartments' address on or shortly after November 2, 2016. This is a reasonable inference based on the following facts and reasonable inferences. The 7-Day Notice is dated November 2, 2016, and references Terrace Way Apartments, including the address of Terrace Way Apartments. The 7-Day Notice indicates that it was authored by Reginald Gardner. The Case History Report indicates that Reginald Gardner was the code enforcement officer who inspected Terrace Way Apartments on November 1, 2016. Therefore, Reginald Gardner knew the address of Terrace Way Apartments, which had an apartment office, and he sent the 7-Day Notice to this address on or shortly after the date he authored the 7-Day Notice, November 2, 2016.

Based on the foregoing facts and reasonable inferences, the Court concludes that a reasonable factfinder could find that a public officer or employee for the City of Bakersfield served Defendants with written notice of Tanisha's defective window on or shortly after November 2, 2016. Therefore, Defendants have failed to demonstrate that there is insufficient evidence to support this element of Tanisha's unlawful rent collection claim.

Defendants' primary argument to the contrary is that the 7-Day Notice is addressed to a business entity and address — Treble LLC at 909 Chester Avenue — that are not associated with Defendants. The Court rejects this argument for two independent reasons.

First, while it is true that the 7-Day Notice references Treble LLC at 909 Chester Avenue, both of which Dharam testified he was not associated with, this fact alone does not negate the reasonable inference that the 7-Day Notice was sent to Defendants at Terrace Way Apartments. This is because two competing reasonable inferences may coexist, and of the two competing inferences, the Court must accept the reasonable inference that favors the non-moving party. See Narayan, 616 F.3d at 899 (explaining that although the inference needs to be rational or reasonable, the inference does not need to be the most likely or the most persuasive inference);

Casas Office Machines, Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994) ("If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmovant."); Wade v. Fresno Police Dep't, No. 1:09-CV-0599 AWI-BAM, 2012 WL 253252, at *18 (E.D. Cal. Jan. 25, 2012) (Ishii, J.) ("In light of the above factors, and viewing the evidence in the light most favorable to [nonmoving party], the Court concludes that the evidence supports more than one reasonable inference . . . ."). Defendants have not submitted conclusive evidence that proves the 7-Day Notice was sent to Treble LLC or the 909 Chester Avenue address or, for that matter, that it was not sent to Defendants. This lack of evidence is what, in part, allows for the reasonable inference that the 7-Day Notice was sent to Defendants, as discussed above. One possible reason for this lack of conclusive evidence — if such evidence even exists — is that the parties did not depose or obtain an affidavit from a knowledgeable representative of the City of Bakersfield.

Second, Defendants' argument about Treble LLC and the 909 Chester Avenue address was not raised in Defendants' motion. Rather, it was raised in Defendants' reply. See Doc. No. 36 at 3 (Defendants' reply); cf. Doc. No. 27-1 (Defendants' motion). This concerns the Court because Plaintiffs were not put on notice that they should address this argument in their opposition. Therefore, the Court will not consider this argument as support for Defendants' motion. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

ii.     Whether Tanisha's window was abated within 35 days of service of notice

Defendants did not abate Tanisha's defective window within 35 days of being served with written notice of the defect — this is a finding that a reasonable factfinder could make based on the following facts and reasonable inferences. First, as discussed above, a reasonable factfinder could infer that Defendants were served with notice of Tanisha's defective window on or shortly after November 2, 2016. Second, Defendants never abated Tanisha's defective window during Tanisha's tenancy in Unit 14, which lasted from 2014 to April 2017. See Tanisha Wiley Depo. at 46-47; PSFD No. 4. Third, there are far more than 35 days between November 2, 2016 and April 2017.

Based on the foregoing facts and reasonable inferences, the Court concludes that a reasonable factfinder could find that Defendants did not abate Tanisha's defective window within 35 days of being served with written notice of the defect.  Therefore, Defendants have failed to demonstrate that there is insufficient evidence to support this element of Tanisha's unlawful rent collection claim.

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment as to Tanisha's unlawful rent collection claim.

4.      Defendants' request for attorneys' fees

In Defendants' motion, Defendants request attorneys' fees as the prevailing party on the unlawful rent collection claims.  California Civil Code § 1942.4(b)(2) states that "[t]he prevailing party [of an unlawful rent collection claim] shall be entitled to recovery of reasonable attorney's fees and costs of the suit in an amount fixed by the court."  Accordingly, the Court will order Defendants to file by January 10, 2019, a memorandum of fees and costs with supporting affidavits concerning Defendants' fees and costs expended in relation to the unlawful rent collection claims pleaded by Mario, Arissa, and Tanisha.  Plaintiffs may file by January 24, 2019, an opposition to Defendants' memorandum of fees and costs.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendants' motion for partial summary judgment is GRANTED as to the following claims:

    a.      The unlawful rent collection claims (eleventh claim for relief) of Mario Tolls, Arissa Dickson Tolls, and Tanya Lewis;

    b.      The Bane Act claims (fourth claim for relief) of Arissa Dickson Tolls, Tanya Lewis, and Tanisha Wiley;

2.    Defendants shall FILE by January 10, 2019, a memorandum of fees and costs with supporting affidavits concerning Defendants' fees and costs expended in relation to the unlawful rent collection claims pleaded by Mario Tolls, Arissa Dickson Tolls, and Tanya Lewis;

3.      Plaintiffs may FILE by January 24, 2019, an opposition to Defendants' memorandum of
        fees and costs;

4.      Defendants' motion for partial summary judgment is otherwise DENIED. \

IT IS SO ORDERED.

Dated:   December 10, 2018                    _____

                                             SENIOR  DISTRICT  JUDGE